Robert Lee **CLEMENTS**, Adm'r, etc., Appellants,

v.

Reynolds J. **PEYTON**, Appellee.

Court of Appeals of Kentucky.

Oct. 1, 1965.

Rehearing Denied Feb. 18, 1966.

Robert Hubbard, Louisville, for appellant.

John L. Bennett, Louisville, for appellee.

DAVIS, Commissioner.

Appellant's decedent, Lee Clements, was fatally injured when struck by appellee's automobile. A jury returned a verdict for appellee; appellant attacks the ensuing judgment by contending that the court erroneously excluded competent evidence, the verdict is contrary to the evidence, and certain instructions erroneously were refused and others erroneously given.

The fatal accident occurred shortly after 10:00 p. m. on April 29, 1963, during a heavy and blinding rainstorm. The decedent was walking across Taylor Boulevard in Louisville when he was struck by appellee's car. The site of the accident was near the intersection of Taylor Boulevard with Central Avenue. Much of the controversy rages around the question whether the decedent was a pedestrian in the crosswalk at the intersection, or whether he was attempting

to cross Taylor Boulevard between intersections and away from the marked crosswalk.

Appellee was the only eyewitness whose testimony was heard at the trial. He said that he was proceeding southwardly on Taylor Boulevard at a speed of 25–30 m. p. h. His vision was so impaired by the rain that he was unable to see ahead for more than twenty feet. Taylor Boulevard is a four-lane, two-way street; appellee was driving in the inside or left traffic lane for vehicles traveling southwardly. Appellee first saw decedent when the latter was twenty feet in front of appellee's car; at that time decedent was walking from the east toward the west side of Taylor Boulevard, and had stepped from a "median" in the street into the traffic lane of appellee. It was appellee's estimate that decedent was "about two feet off the median" into appellee's line of travel when appellee first saw decedent. Appellee's car had an over-all front width of six feet eight inches; an indentation was made in the front of the car by the impact of decedent's body against it. The indentation was four feet, eleven inches from the left side of the automobile front.

Appellee testified that he applied his brakes immediately after seeing decedent, and his car had slowed somewhat at the moment of impact. It was appellee's estimate that decedent's body lay on the car's fender about two seconds after which the body "slid off the fender" to the point where it came to rest. Appellee "skidded about fifty feet" before his car stopped. His headlights were on low beam and would disclose a substantial object one hundred feet ahead, under normal atmospheric conditions.

The point of collision, according to appellee, was substantially opposite the front door of the South End Cafe, which is a business place located on the east side of Taylor Boulevard. Decedent had just left the South End Cafe, where he was a "handy-man" and where he had been on duty since about 8:00 a. m. on the day of the accident. The point of impact, as fixed by appellee, was about seventy-five feet south of the crosswalk at Taylor and Central. The decedent's body was found at a point nearly one hundred feet from the same crosswalk.

It was shown that decedent's place of residence was *south* of Central Avenue, so that the most direct route from South End Cafe to his residence would not have been via the crosswalk at Taylor and Central located north of South End Cafe.

At the time of this accident there was an electric traffic light signal regulating the flow of vehicular and pedestrian traffic at the intersection of Taylor and Central; according to appellee, this signal was green for his passage through the intersection, and the accident did not occur until he had cleared the intersection by some seventy-five feet.

 The first assignment of error relates to exclusion of two items of evidence offered by appellant. We shall treat these separately. Appellant offered the witness Norma Jean Smith, a waitress in the South End Cafe. By her it was shown that decedent had left the cafe immediately before the accident occurred. The witness "heard a noise like a wreck" just after decedent left the cafe. When she undertook to testify as to the site of the noise the court sustained appellee's objection to the evidence. By avowal she then testified that the noise "sounded like it come from the corner of Taylor and Central." She estimated that she was standing inside the cafe at a point about twenty-five feet from the open front door. The front door of the cafe is not flush with the sidewalk on Taylor, but is located some forty-four feet east of the street curb to accommodate parked automobiles. The witness was engaged in conversation with two patrons of the cafe when she heard the noise; between her position and the door was a wooden lattice partition. The witness did not elaborate as to the nature of the sound she heard—whether of

brakes howling, or the thud of an impact, or of glass breaking.

We hold that it was not prejudicial error for the trial court to exclude the tendered evidence. Appellant relies on Daniels v. Commonwealth, 302 Ky. 672, 195 S.W.2d 265; Hornsby v. Commonwealth, 305 Ky. 747, 205 S.W.2d 338; and Freeland v. Todd, Ky., 379 S.W.2d 723, to support his contention that the evidence was competent, but we are of the view that those decisions are not dispositive of the point at hand. In Daniels this court allowed evidence that the sound of a "high powered rifle" shot had come from up the river. But there was no effort there to pinpoint the origin of the sound—merely a general direction from which it had emanated. In Hornsby two witnesses, standing about twenty or twenty-five feet from a certain house, testified they heard two shots fired inside that house. This was held competent, and rightly so. The latter case would more nearly approach the one at bar had these witnesses undertaken to specify from which room or which floor of the house these sounds had originated. Moreover, the opportunity for the witnesses to form an accurate and trustworthy opinion in the Hornsby case was far greater than in the case before us. In Freeland the testimony about the sound of a collision was not offered nor received for the purpose of demonstrating where the collision occurred; neither is there any indication that objection to the evidence was made in that case. Neither do we observe anything in the text authorities cited by appellant impelling a different view. See 20 Am.Jur., Evidence, § 888; 32 C.J.S. Evidence § 546(5). In short, we do not subscribe to the position that the rule permitting a witness to express an opinion as to the direction from which a sound appeared to come is sufficently broad to allow the evidence for the purpose of fixing a relatively precise location of the sound's origin—and particularly under the physical circumstances of the present case. We think the evidence was admissible, but it was not sufficent to place decedent in the crosswalk, nor to overcome the evidence tending to prove that decedent was not in the crosswalk. For this reason, the exclusion of the evidence was not prejudicial. CR 61.01.

■ ■ ■ We conclude that the trial court properly rejected the evidence offered through the same witness, Norma Jean Smith, as to the statements of "some guys sitting in the bar." The evidence came in by avowal. The witness said that just after the sound of the crash was heard "some guys sitting in the bar" expostulated "* * * there has been another wreck on the corner"—or, as she put it another time, "They said there had been another wreck on that corner." Appellant contends that this testimony should have been admitted under the *res gestae* exception to the hearsay rule, but we disagree. Bypassing the serious question whether this statement emanated from a participant or actor (as distinguished from a mere bystander), and assuming, without deciding, that no inhibition to admissibility is found in that area, the statement yet remains incompetent. The same reasoning applied to the ruling on the opinion of Norma Jean Smith applies as to the statement of these "guys." Additionally, the *res gestae* rule recognizes that outcries which qualify under the rule with respect to time and place, yet must be competent evidence. See 20 Am.Jur., Evidence, §§ 674, 679. For example, a bystander might cry out, upon witnessing an accident, "I know A has lots of insurance," but this statement would not be admissible. Since these "guys" could not have qualified to assert their opinion that there had been another "wreck on that corner"—absent some showing of their reasonable opportunity to make such a conclusion—neither can their opinion be injected by the devious means here presented.

■ ■ ■ Appellant contends that even without the rejected testimony just discussed, the verdict is contrary to the evidence. The tenor of this argument is that

the physical facts so refute the eyewitness testimony of appellee as to demonstrate that the victim was in the crosswalk when struck by the car. Appellant points to these factors to sustain his position:

Appellee admitted that his vision was so obscured by rain and atmospheric conditions as to prevent his seeing more than twenty feet ahead. Thus, it is reasoned, appellee could not possibly know that the point of impact was about opposite the South End Cafe, since that place was more than seventy feet to the side of appellee. Moreover, this situation precluded appellee's seeing the median and prevented his formulating a credible estimate of the distance between the crosswalk and the point of collision.

Further, appellant states, it is demonstrably impossible that decedent could have walked four feet eleven inches while appellee's car traveled only twenty feet— whether at twenty-five or thirty miles per hour.

Additionally, since appellee estimated that decedent's body lay on his fender for two seconds after the impact, this shows conclusively that the decedent was carried at least eighty-eight feet beyond the point of impact, whereas the body was found merely twenty-eight feet south of the claimed impact point.

Witness Norma Jean Smith testified that when appellee came into the South End Cafe to use the telephone just after the accident he said that he'had first thought he had struck a dog, but learned that it was a man; this is cited as evidence that appellee actually never did see decedent until after the collision.

Using the circumstances just mentioned, the appellant contends that the true impact of this evidence is that decedent was in the crosswalk when struck. The argument rests on the theory that appellee's car must have carried decedent's body almost a hundred feet from the intersection, thereby demonstrating that decedent was in the crosswalk when struck.

We are mindful that in some situations physical evidence is so convincing as to destroy the probative value of contrary testimony from an eyewitness. Thornberry v. Smith, Ky., 346 S.W.2d 727, is a typical case in point. It is to be noted that in the cases applying the rule the physical facts are found to be *conclusive*. The physical facts in the case at bar are not so conclusive as to destroy the probative value of the testimony of appellee. Even if we indulged the speculation that appellant presents— thereby placing the decedent in the crosswalk—what evidence remains with regard to the traffic signal at the intersection? The only evidence on that point is that the signal was green for appellee as he entered and passed through the intersection. In fact, a witness for appellant testified that he was driving eastwardly along Central Avenue, approaching the intersection, just prior to the accident. This witness said that the traffic light was red for traffic on Central when the witness was about 150–200 feet from the intersection, but changed to green for Central Avenue traffic after this witness had traveled about thirty feet. According to the witness "just at the moment the light changed" an automobile going south on Taylor Boulevard went under the light through the intersection; although the witness was not able to identify the car as appellee's, the clear inference from his testimony—and from the offering of him as a witness by appellant—is that the unidentified car was appellee's. The same witness said that he saw no pedestrian in the crosswalk as the witness approached Taylor Boulevard. However, the witness did hear a noise, which he first thought to be thunder, but which he supposes was the noise of the collision. At the time he heard the noise the car he had seen pass under the light was not within his range of vision—although the crosswalk was. The witness turned right onto Taylor and drove

southwardly until he crossed over to the other side and went to the South End Cafe. It was not until he reached the cafe that he learned of the accident and saw decedent's body on the street. It seems clear that the evidence of this witness forecloses the idea that decedent was struck in the cross walk. Moreover, the evidence of the same witness supports the view that had decedent entered the crosswalk to come from the east to the west side of Taylor Boulevard he would have walked against the red light that this witness saw.

■ Thus, the evidence tends to show only that decedent was struck as he was attempting to cross the street between the intersections and not in the crosswalk. Under such circumstances the rule is well settled that the pedestrian is guilty of contributory negligence as a matter of law. Severance v. Sohan, Ky., 347 S.W.2d 498; Music v. Waddle, Ky., 380 S.W.2d 203, and cases there discussed.

■ The evidence precludes the theory of "last clear chance" as a basis for recovery. The only evidence shows that the accident happened in the twinkling of an eye, and that appellee had no chance to avoid the accident—certainly not a last or clear chance. Appellant relies on Riley v. Hornbuckle, Ky., 366 S.W.2d 304, as demonstrating his right to recover under the "last clear chance" doctrine, but that decision is readily distinguishable from the present case. In the Riley case the evidence revealed that the pedestrian was in the automobile's path while the car moved several hundred feet along a well-lighted, unobstructed highway. Here the only evidence reflects that decedent stepped into the path of the car in a blinding rainstorm, at a point only twenty feet in front of the car.

■ This view of the case leads us to the inevitable conclusion that the appellee was entitled to a directed verdict. In such a situation, we refrain from consideration or discussion of the asserted errors as to the instructions offered and given. No er-

ror in that regard could avail for appellant, since he was not entitled to have the case submitted to the jury anyway. Tate v. Crockett, Ky., 277 S.W.2d 22.

The judgment is affirmed.