CARL F. JOHNSON, JR. [JAMES J. GENTILE, ADMINISTRATOR, SUBSTITUTED PLAINTIFF] v. JOHN A. NEWELL ET AL.

ALCORN, C. J., HOUSE, COTTER, RYAN and SHAPIRO, Js.

Argued November 6, 1970—decided January 13, 1971

*A. Reynolds Gordon,* with whom were *Arthur A. Hiller* and *James J. Gentile,* for the appellant (plaintiff).

*Paul V. McNamara,* with whom, on the brief, was *Donald J. St. John,* for the appellees (defendants).

COTTER, J. This was an action for damages for personal injuries claimed to have been sustained by Carl F. Johnson, Jr., the plaintiff's intestate,[1] by virtue of an accident which occurred on October 7, 1961, when the late Carl F. Johnson, Jr., was driving his automobile on Connecticut route 7 in the vicinity of Cornwall Bridge, Kent. The first count of the complaint, alleging a breach of warranty, was directed against the defendant, John Newell, doing business as Newell's Atlantic Service Station, who was engaged in selling "new recapped tires" at retail. The second count of the complaint, also alleging a breach of warranty, was directed against the defendants James and Ralph DeSantie, doing business as J and R Retreading Company, who were engaged in the manufacture and sale of "new recapped tires" which were sold to dealers including the defendant Newell. The third count in negligence is brought against all the defendants.

The various specifications relating to warranty, alleged, inter alia, that the defendants warranted a "new recapped tire", sold to Carl F. Johnson, Jr., was free from defects; that it was safe; that it was fit for the particular purpose for which it was purchased; that it was of merchantable quality; that it was in good condition; and that Johnson relied on the skill and judgment of the defendants in selecting the tire he purchased.

In the third count the plaintiff alleged that Newell

---

[1] Carl F. Johnson, Jr., died on April 18, 1970. James J. Gentile, appointed administrator of his estate on May 28, 1970, was substituted as party plaintiff on September 11, 1970.

was negligent "in that he failed to properly inspect said tire before mounting it upon the plaintiff's automobile; in that he knew or in the exercise of reasonable care should have known that said tire was or was likely to be unsafe and likely to blow out, and he installed a dangerous and defective tire upon the plaintiff's vehicle", and that James and Ralph DeSantie were negligent "in that they recapped a faulty, old, rotted, weak, cracked and worn and dangerous casing for sale at wholesale and eventual retail use; in that they sold a recapped tire which was dangerous and hazardous; in that although they knew or should have known upon proper inspection that said casing was defective, faulty, old, rotted, weak, cracked and dangerous, they nevertheless recapped it; in that they purchased poor quality casings; in that they knew or should have known that said tire when recapped was or would be dangerous and unfit, and they nevertheless sold the same; in that they failed to properly inspect said used tire casing before using same in the recapping process; in that they recapped said tire defectively and improperly and negligently."

The complaint further alleged, as to the first two counts in warranty, that "in fact" the defendants breached the warranties since the "tire was not fit for use on a motor vehicle as intended, was not of merchantable quality, was not in good condition and was defective, cracked and worn and so weak as to be liable to blow out when in use." Under the count concerning negligence, it was alleged as to all defendants that the recapped tire was defective, unsafe and unfit "for use on a motor vehicle in that the sidewalls were old, rotted, defective, cracked and worn and so weak as to be liable to blow out when in use."

The crux of the case, as the evidence came in under these allegations, was whether the defendants were negligent and were liable for a breach of warranty because a recapped tire which Carl F. Johnson, Jr., claimed he purchased from Newell on October 4, 1961, which Newell in turn had purchased from the defendants, James and Ralph DeSantie, allegedly blew out, causing the Johnson vehicle to swerve and strike one or more guardrail posts and crash into a utility pole, throwing Johnson from the car, causing him to suffer serious personal injuries.

At the conclusion of the trial, after all the evidence had been submitted, the defendants made a motion for a directed verdict which was denied. Thereafter, the jury, although they had been returned by the court for further deliberations on two occasions, reported that they were unable to reach a verdict and were discharged. The defendants, pursuant to Practice Book § 255, then moved to have judgment entered in accordance with their motion for a directed verdict and the court thereupon directed the entry of judgment in favor of the defendants.

We consider the evidence introduced in the course of the trial in the light most favorable to the plaintiff in reviewing the action of the court in rendering a judgment for the defendants when, after a full trial, no verdict was returned; see *Pelletier* v. *Bilbiles,* 154 Conn. 544, 546, 227 A.2d 251; and in so doing we determine first whether a directed verdict in favor of the defendants would have been proper upon the evidence in the case, and second, if the answer to that is in the affirmative, whether the court by not thereby permitting a new trial abused the discretion vested in it in rendering judgment for the defendants. See *Donch* v. *Kardos,* 149 Conn. 196, 200, 177 A.2d 801.

The plaintiff agrees that in order to recover in

the instant case it was necessary to have proved a defect in the condition of the tire which Johnson was alleged to have purchased as described in the pleadings. The following evidence taken in its most favorable light advances plaintiff's claim relative to such a defect and tends to support the allegations of the complaint: Carl F. Johnson, Jr., testified that the right front tire, the one in question, blew out just as he was making a left turn in the road and he stepped on the accelerator in an effort to counteract the blowout, hold the road better and fight the wheel to keep control of the car. Thereafter, he said, the "car dumped to the outside scraping along the guard rail" and hit a telephone pole. He further stated that he knew he had a blowout because of the loud noise, the car pitching forward, the wheel wrenching from his hand, the pulling to the right and from knowledge gained from prior experience with blowouts. Crucial elements in the case concerned the date of purchase of the tire from the defendant Newell and the use of the tire by Johnson before the claimed blowout occurred. In this regard, Johnson testified that he purchased the tire on October 5, 1961, and had only driven it between 100 and 300 miles following the purchase. The date the tire was purchased, the mileage traveled and whether it was defective were questions which were hotly contested and strenuously disputed by the defendants. In fact, the defendants claimed that Johnson purchased the tire on September 8, 1961, that he visually examined the tire; that he observed the manner in which it was mounted on the car wheel; and that after the accident the tire was not flat and had not blown out. The defendant, Ralph DeSantie, coowner of the recapping company from whom the defendant Newell purchased the tire, testified that the tire was equiv-

alent to a first-line new tire; that it carried a guarantee equal to or better than a new tire guarantee; and that a casing that is properly inspected and properly retreaded is perfectly safe on an automobile. A witness called by the plaintiff, who qualified as a tire expert, testified in response to a hypothetical question that a defect in the casing at the time the tire was installed on the car was the cause of the alleged blowout. He based his answer to this question on the assumption that the retreaded tire was purchased on October 4 or October 5, 1961; that it was driven between 100 and 300 miles; that there were no occasions when the tire hit any hard bumps or potholes, as had been previously testified to by Johnson; and that it blew out with a jagged tear as testified to by several witnesses for the plaintiff.

The witness Charles G. O'Neill testified that he inspected the tire in question about four days after the accident at the garage where the car had been towed and he was permitted to state that he observed, at the time, a jagged tear in the tire's sidewall, the only one he saw; and that the fabric or cord was showing. The court refused, however, to permit him to testify that he observed horizontal lines or cracks showing on the sidewall; that when he pushed a pencil into the tear, it went all the way through the sidewall; and that the tire was flat at the time of his inspection. This ruling on evidence has been assigned as error. The court properly excluded evidence of the experiment of O'Neill, made four days after the accident, in which he allegedly pushed a pencil through the sidewall of the tire. It should be noted that the tire was not available at the trial nor could it be located back in 1962. The other testimony in this regard, excluded by the court, was admissible provided the conditions found by the witness O'Neill,

when he made his inspection or observation after the episode, were substantially the same as those existing at a point in time immediately after the accident occurred; and provided that the plaintiff, who offered the evidence, made a proper showing, or offer to show, that there had been no material change in conditions during the time in question. *Steiber* v. *Bridgeport,* 145 Conn. 363, 366, 143 A.2d 434; 29 Am. Jur. 2d, Evidence, § 300. "Testimony of conditions after the happening of an event is relevant to show conditions at the time of the event if the conditions are of such a permanent character that a lapse of time would not make a material difference; but where the situation is transitory in nature, such evidence should not be admitted without proof, at some point, of the similarity of conditions." Id., 367. The evidence as to the lines and cracks in the tire, which was offered to indicate the age of the casing, was admissible for such probative value as it might have since the condition of the tire which the plaintiff was attempting to show in that regard had to do with a condition of more permanent character so that a lapse of time would not make a material difference under the rule stated in *Steiber.* See *Curtin* v. *Benjamin,* 305 Mass. 489, 492, 26 N.E.2d 354. As to the ruling whether or not the witness should have been permitted to testify that the tire was flat, we cannot say that the court abused its discretion in holding that it was inadmissible since the plaintiff failed to establish a proper, preliminary foundation to show that there was a reasonable basis for believing that the tire lost air and became flat because of a blowout that occurred before the impact of the Johnson car with the guardrail and the telephone pole on the day of the accident rather than from some other cause which might have occurred

during the four-day interval. See *Esposito* v. *Hospital of St. Raphael,* 142 Conn. 95, 98, 99, 111 A.2d 545. A trial court has wide discretion as to the admission of questions concerning relevancy and remoteness. *Morico* v. *Cox,* 134 Conn. 218, 224, 56 A.2d 522.

The plaintiff also assigns as error the refusal of the trial court to permit Mrs. Ella Richardson, a witness for the plaintiff, to state what she observed about the right front tire when she saw it a few days after the accident at the garage. No offer of proof appears in the record. Without knowing the purpose of the offer or the answer that might be forthcoming we are unable to rule on this assignment of error. Practice Book § 648; *Hanauer* v. *Coscia,* 157 Conn. 49, 56, 244 A.2d 611.

Raymond D. Weeks, another witness called on behalf of the plaintiff, testified that at the time of the accident he was standing in his driveway, fifteen to twenty feet away from route 7, near the scene of the accident, when he heard a car coming down the road; that he heard a noise which sounded like a shot, a bang; that the car was forty to fifty feet away from him when he heard the bang and he saw the car go by him before it hit the telephone pole. The witness characterized the sound as "a tire blowout." The court sustained the defendant's objection to such a characterization of the sound, ordered any testimony that what he heard was a "blowout" stricken and instructed the jury to disregard anything that had been said concerning it. "The general rule is that witnesses must state facts and not their individual opinions, but there are exceptions to this rule as well established as the rule itself." *Sydleman* v. *Beckwith,* 43 Conn. 9, 11. One such exception is questions of identity as applied to sounds. *Atwood* v.

*Atwood,* 84 Conn. 169, 174, 79 A. 59; *Sydleman* v. *Beckwith,* supra; *Kohr* v. *Metropolitan St. Ry. Co.,* 117 Mo. App. 302, 307, 92 S.W. 1145. The basis for the exception is necessity, "because either the witness cannot otherwise describe it, or describe it in its force, extent, and meaning so that another may see or know what he saw and knew." *MacLaren* v. *Bishop,* 113 Conn. 312, 314, 155 A. 210; 31 Am. Jur. 2d, Expert and Opinion Evidence, § 131; 7 Wigmore, Evidence (3d Ed.) § 1917. The testimony should have been allowed in evidence.

The remaining assignments of error we need discuss in disposing of this appeal are the claims that the court should have allowed in evidence at the trial an exclamation of Franklin Dutil to the effect that "that sounds to me like a shot or blowout" and the proffered testimony of the witness Weeks that he heard Dutil utter the exclamation which the plaintiff characterizes as a spontaneous utterance. Dutil, at the time of the accident, was talking to his uncle, Raymond D. Weeks, in the latter's driveway. The declarant, Dutil, was a bystander, and he did not see the accident. He only heard it. A declaration to qualify as an exception to the hearsay rule as a spontaneous utterance must meet certain requirements to guarantee its trustworthiness. See 6 Wigmore, op. cit. §§ 1747–1757; 29 Am. Jur. 2d, Evidence, § 708. One such requirement is that the declaration is made by "one having an opportunity to observe the matter of which he speaks." *Perry* v. *Haritos,* 100 Conn. 476, 484, 124 A. 44. Such a rule is even more compelling where the witness is asked to testify as to a matter which is claimed to be the proximate cause of an accident. Where the declarant is a bystander, courts have held, in order to guarantee the trustworthiness of the testimony, which is

the rationale behind its admission, that the declaration should be excluded where the declarant did not personally observe the act or fact declared. *Carney* v. *Pennsylvania R. Co.,* 428 Pa. 489, 496, 240 A.2d 71; *Montesi* v. *State,* 220 Tenn. 354, 367, 368, 417 S.W.2d 554; *Clements* v. *Peyton,* 398 S.W.2d 477, 480 (Ky.); 29 Am. Jur. 2d, Evidence, § 724; 6 Wigmore, op. cit. § 1751. The court did not err in excluding the proffered testimony of Weeks and Dutil.

In rendering judgment for the defendants in accordance with their motion for a directed verdict the trial court ruled that such a course was justified because the jury on the evidence could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed. *Johnson* v. *Consolidated Industries, Inc.,* 153 Conn. 522, 524, 218 A.2d 380. There was, of course, evidence which indicated that the accident might have been due to causes other than a defective tire but such factors do not enter into the decision which must be made in the present appeal. Although the testimony, erroneously excluded, pertaining to the characterization of the noise or bang as a blowout does not tend to prove in and of itself that the tire was defective since as one of the plaintiff's expert witnesses testified "there are plenty of ways to have a blowout without having a defect in the tire", nevertheless, the proffered testimony, which was excluded, relating to the cracks and lines in the casing taken together with the other evidence, narrated earlier in the opinion, indicates that there is a sufficiency of evidence to support a plaintiff's verdict, if we are to consider such evidence in the light most favorable to the plaintiff. *Leary* v. *Johnson,* 159 Conn. 101, 102, 267 A.2d 658. Under such circumstances for which the party is not at fault the proper exercise of the court's discretion calls for

an order for a new trial rather than the rendering of a judgment in favor of the defendants. See *Donch* v. *Kardos,* 149 Conn. 196, 202, 177 A.2d 801.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.