STATE OF CONNECTICUT *v.* KENNETH SCHAFFER

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued February 6—decision released April 8, 1975

310

*Edwin M. Lavitt,* special public defender, with whom, on the brief, was *Harold M. Levy,* for the appellant (defendant).

*Donald B. Caldwell,* state's attorney, for the appellee (state).

HOUSE, C. J. On March 13, 1973, following a trial before a three-judge court, the defendant was found guilty of murder in causing the death of his wife, Mildred Schaffer, and this appeal was taken from the judgment of that court. On the appeal, the defendant has pressed six assignments of error. The principal claim is that the state failed to sustain its burden of proof of guilt and the remaining assignments of error all relate to evidential rulings of the trial court.

Whether the evidence before the court supports its conclusion of guilt is tested by the summary of evidence presented in the appendices to the briefs. *State* v. *Lally,* 167 Conn. 601, 603, 356 A.2d 897; *State* v. *Saia,* 167 Conn. 286, 287, 355 A.2d 88; *State* v. *Coleman,* 167 Conn. 260, 262, 355 A.2d 11. We first consider the merits of that assignment of error and note some of the pertinent evidence which the court had for consideration: The body of Mildred Schaffer was found on the early morning of July 4, 1972, on the west side of Snipsic Lake Road in Ellington. She had been shot once in the chest and once in the shoulder with both bullets passing entirely through the body. A white caustic substance which caused blistering and

burning of the skin was present on the upper portion of the body. One .41 caliber magnum bullet fired from a Ruger Blackhawk revolver was found in the dirt beneath the body. On the weekend before July 4, the defendant was looking for a gun with which he stated he was going to kill his wife. He also stated that he would pour acid or lye in the wound to destroy the bullet. A witness, Odell Garland, had a .41 caliber magnum Ruger Blackhawk revolver which he gave to the defendant in June or July of 1972. On July 3, the defendant placed the gun between the mattresses of a bed in his apartment. The same day he sent Robin Page, the sister of his girl friend, to purchase for him a container of lye. He put the lye and water in a coffee jar and placed the jar in a brown paper bag in his car.

Mrs. Schaffer went to the apartment of the defendant at about midnight on July 3 and at about 12:30 a.m. on July 4 left the apartment with him. He returned briefly to get the gun and then drove off with Mrs. Schaffer. He returned to the apartment about 3 a.m. and told his girl friend, Bonnie Page, that he "did it for her." He took the gun out of his pants and put it between the mattresses. His shirt appeared to have blood stains on it and he ripped it up and flushed it and two blank shells down the toilet. He told Bonnie that he wanted to put the lye on Mrs. Schaffer's body so that she could not be identified. Later, while he was in jail, he asked Bonnie to get the gun from the cellar, which she did and she put it into a trash can.

On July 4, at about 1:50 a.m., the occupants of a car parked on Snipsic Lake Road heard two loud sounds like firecrackers to the east of where they were parked. No car passed theirs in either direc-

tion until about fifteen to twenty minutes later when a large dark-colored 1963 or 1964 Pontiac passed, traveling westerly toward Ellington. The defendant owned and drove a 1964 maroon Pontiac automobile. Measurement of tire tracks at the site where the body was found matched the measurement of the tires on the defendant's car. In June of 1972, the defendant told a witness, Ralph McGriff, that he intended to kill his wife. After the death of Mrs. Schaffer, McGriff was in the cellar of the defendant's apartment house with the defendant when McGriff found a .41 caliber magnum bullet on the cellar floor. The defendant asked him to throw the bullet away but McGriff kept it and later turned it over to the police.

There was also evidence that leaves at the scene where the body was found and the victim's brassiere had on them a material which is a strongly alkaline solution such as would be deposited by a lye or lime-type mixture. After Mrs. Schaffer's body was found, the defendant told Garland, the man who had given him the revolver, that he had killed her.

Brief as it is, this summary of the evidence which the court had for its consideration suffices to compel a conclusion that there was sufficient evidence to support a finding by the trial court that the state had proved that the defendant was beyond a reasonable doubt guilty of the crime with which he was charged.

We turn now to a consideration of the defendant's assignment of errors addressed to the court's evidential rulings.

The first claim is that the court erred in admitting in evidence a black and white photograph depicting

the body of the victim, a portion of Snipsic Lake Road, some clothing and the nature of the area where the body was found. The defendant objected to the use of the photograph on the ground that it was inflammatory. The state claimed that it was admissible as evidence to show the relationship of the body to the road, to illustrate to the court the conditions described in the testimony of witnesses, and to prove material facts in issue. The admission of the photograph was in the broad discretion of the court and we find no abuse of discretion in the court's ruling. *State* v. *Dubina,* 164 Conn. 95, 102, 318 A.2d 95; *State* v. *LaBreck,* 159 Conn. 346, 351, 269 A.2d 74; *State* v. *Conte,* 157 Conn. 209, 215, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428.

The defendant's second claim is that the court erred in admitting into evidence testimony concerning statements made by the defendant to the police in the absence of a prior *Miranda* warning to him. The finding of the court discloses that on the evening of July 4 a state police officer met with the defendant and others at a hospital where the defendant identified the body of the victim as that of his wife, that the officer asked the defendant to accompany him to the resident trooper's office in Ellington to assist the police in obtaining information that might be valuable in the investigation into Mrs. Schaffer's death, that the defendant was not held for interrogation, that he drove to the office in his own car, that he was not at any time in custody, that he talked to the troopers at the office concerning his wife and was willing to give a statement and appeared willing to assist the police in any way he could. Most significant was the testi-

mony of the officer that the defendant was not in custody and was under no restraint, that he was not considered a suspect at that time, and that had he wanted to leave no attempt would have been made to detain him. No evidence whatsoever was introduced to contradict the testimony of the trooper, and the defendant's claim on appeal is limited to a simple assertion without factual basis that "it is inconceivable that the defendant was not a suspect at the time of the July 4, 1972 interrogation."

*Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694, established the principle that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." It defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," as distinguished from "routine investigatory information-gathering." It appears that in this case the questioning of the defendant was in the course of routine investigatory information-gathering, that the investigation had not focused on the defendant as an accused, and that the questioning was in no sense a custodial interrogation. We discussed a somewhat similar interrogation in *State* v. *Szabo,* 166 Conn. 289, 348 A.2d 588. There is no need to repeat the authorities cited in that case. They fully support the ruling of the trial court that in the circumstances of the present case the statements of the defendant were properly admitted despite the absence of a *Miranda*-type warning.

The defendant next claims error in the court's allowance of testimony concerning certain tests made by the police with the defendant's car. Specifically, the defendant argues that the tests conducted with the automobile were not authorized by the warrant pursuant to which the car was seized, and thus the performance of these tests constituted an illegal and warrantless search.

On July 7, 1972, the police obtained a search and seizure warrant for the defendant's car. On July 12, 1972, the police had possession of the defendant's automobile under the authority of that warrant and took the car to the scene of the homicide to determine if it were possible to turn it around on that particular section of the road. It is the admissibility of the testimony as to these test results which the defendant attacks, claiming that the test constituted a separate and distinct search requiring a separate and distinct warrant.

The fourth amendment to the federal constitution requires only that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

As the United States Supreme Court has said: "[T]he primary object of the Fourth Amendment was determined to be the protection of privacy. . . . 'The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusions into his privacy.' *Jones* v. *United States,*

357 U.S. 493, 498 . . . [78 S. Ct. 1253, 2 L. Ed. 2d 1514]; see also *Schmerber* v. *California,* 384 U.S. 757 . . . [769–70, 86 S. Ct. 1826, 16 L. Ed. 2d 908]; *Katz* v. *United States,* 389 U.S. 347, 350 . . . [88 S. Ct. 507, 19 L. Ed. 2d 576]; *United States* v. *Dionisio,* 410 U.S. 1, 14–15 . . . [93 S. Ct. 764, 35 L. Ed. 2d 67]." *Cardwell* v. *Lewis,* 417 U.S. 583, 589, 94 S. Ct. 2464, 41 L. Ed. 2d 325. When the tests were conducted with the defendant's car, it was lawfully in custody of the police under a valid warrant. The defendant does not contest the validity of the warrant under which his car was seized. We do not find that any right to privacy of the defendant was infringed upon by the tests conducted with his car while it was in the lawful possession of the police.

The defendant next assigns error to the court's admission into evidence of testimony given by the police concerning physical measurements which were made at the scene of the homicide eight days after the victim's body was found. He asserts that this evidence should not have been admitted without a showing that the area was substantially the same on the day the measurements were taken as on the day the body was discovered. Specifically, the state offered testimony as to the distance between a rock on the roadside and an indentation in the earth bank. That measurement was identical to the distance measured from certain marks on the license plate of the defendant's car to the left front protrusion of the vehicle. In addition, a photograph taken at the homicide scene and showing the rock and the indentation in the bank was admitted into evidence without objection. The defendant objected to the testimony comparing the measurements taken from his car with those taken at the scene inasmuch as the state failed to show that the scene of the

crime was substantially the same on the day the measurements were taken as on the day the body was discovered.

The trial court has broad discretion in determining the relevancy of evidence. *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776; *State* v. *Carnegie,* 158 Conn. 264, 273, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 445; *State* v. *Smith,* 157 Conn. 351, 355, 254 A.2d 447; *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724, cert. denied sub nom. *State* v. *Joseph,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557. "Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639; *Pope Foundation, Inc.* v. *New York, N.H. & H.R. Co.,* 106 Conn. 423, 435, 138 A. 444." *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 82, 291 A.2d 715.

"Testimony of conditions after the happening of an event is relevant to show conditions at the time of the event if the conditions are of such a perma-

nent character that a lapse of time would not make a material difference." *Steiber* v. *Bridgeport,* 145 Conn. 363, 367, 143 A.2d 434; see also *Johnson* v. *Newell,* 160 Conn. 269, 276, 278 A.2d 776.

From the testimony and photographic evidence, the court could reasonably find that the conditions testified to were of such a permanent nature that the elapsed time did not make a material difference. It did not abuse its discretion in admitting testimony as to the comparison of measurements made at the scene of the crime with those on the defendant's car.

Lastly, the defendant claims that the trial court erred in allowing the testimony of a witness which characterized as blood a stain she observed on a window of the defendant's car. The defendant argues that the witness was not qualified as an expert in the identification of physical and chemical substances such as blood and thus was incompetent to testify as to her opinion as to what kind of a stain it was.

It is permissible to admit into evidence the "opinions of common observers in regard to common appearances, facts and conditions . . . in a great variety of cases." *Sydelman* v. *Beckwith,* 43 Conn. 9, 11; see also *Stephanofsky* v. *Hill,* 136 Conn. 379, 382, 71 A.2d 560. When the question involved can be answered by the application of ordinary knowledge and experience, expert testimony is not required; *Toomey* v. *Danaher,* 161 Conn. 204, 210, 286 A.2d 293; *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 454, 172 A.2d 192; although "[t]o render opinions of common witnesses admissible it is indispensable that the opinions be founded on

their own personal observation, and not the testimony of others, or on any hypothetical statement of facts, as is permitted in the case of experts." *Sydelman* v. *Beckwith,* supra, 12; see also *Stephanofsky* v. *Hill,* supra.

"Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, unless abused, will not constitute reversible error." *State* v. *Orsini,* 155 Conn. 367, 373, 232 A.2d 907; see also *Jackson* v. *Waller,* 126 Conn. 294, 306, 10 A.2d 763. Considering the substance identified, its location, and the normal human experience of the witness, we conclude that the trial court did not abuse its discretion in determining that under the circumstances the witness was competent to give testimony characterizing as blood the stain she observed on the window of the defendant's car.

There is no error.

In this opinion the other judges concurred.