STATE OF CONNECTICUT *v.* TROY WESTBERRY
(AC 21734)

Foti, Schaller and Flynn, Js.

Argued January 10—officially released March 19, 2002

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Troy Westberry, appeals from the judgment of conviction, rendered following a jury trial, of the crime of murder in violation of General

Statutes § 53a-54a.[1] On appeal, the defendant claims that the court (1) improperly admitted into evidence certain testimony under the spontaneous utterance exception to the rule against hearsay and (2) misled and confused the jury when it instructed the jury regarding the essential elements of intent and proximate cause. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The events giving rise to this conviction were the culmination of a period of animosity between two street groups in Hartford. By the spring of 1999, ill will existed between a group of individuals that included the defendant and Jesse Pope, and another group of individuals that included Gerald Jenkins, Dwayne Stewart and the victim, Anthony Bennefield. That hostility manifested itself in several violent altercations between members of the two groups prior to the events underlying this appeal.

Sometime near the end of April, 1999, the defendant gave money to Pope and asked him to rent a car for him. Pope thereafter asked an acquaintance, Kimberly Sarafopolous, to rent the car under her name. She complied with Pope's request. In the subsequent days, Sarafopolous, at Pope's request and with the use of money he had given to her, made several exchanges for different cars. On each occasion, Pope delivered the rental car to the defendant. On May 4, 1999, Sarafopolous rented a gold colored Chevrolet Monte Carlo. On May 5, 1999, the defendant used the Monte Carlo to take his girlfriend to and from school.

On May 5, 1999, Pope was driving down Albany Avenue in Hartford when Jenkins drove up behind him

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

in a white Chevrolet Lumina. Jenkins drove alongside Pope's car and began shooting at him. Pope tried to run Jenkins' car off the road, but was not able to do so. Jenkins fired yet another shot in Pope's direction before Pope drove away.

Later that night, Jenkins, Stewart and the victim celebrated the victim's birthday at a local nightclub located on Albany Avenue. At some point, the victim went outside and fell asleep in Jenkins' car, which was parked in front of the club. At around 1:30 a.m., Stewart, along with three other men, got into Jenkins' Lumina. Stewart sat in the driver's seat, the victim sat in the passenger's seat and the other three men sat in the rear passenger seats. Shortly after driving away from the club, Stewart pulled over to the side of the road on Lenox Street, and several of the vehicle's occupants smoked marijuana.

At that time, the defendant was operating the gold Monte Carlo on Lenox Street. He was the vehicle's sole occupant. He pulled very closely along the driver's side of the Lumina and fired four shots in its direction. The victim sustained fatal injuries. Two bullets penetrated his skull, and he also sustained two bullet wounds to his right hand. Thereafter, the defendant drove farther along Lenox Street and turned his headlamps on when he reached a nearby stoplight. He then turned onto Albany Avenue and continued to drive away from the scene of the shooting. Stewart and the other men in the Lumina realized that the victim, who had been asleep prior to the shooting, had been shot. After one of the men summoned help, police and emergency medical personnel arrived on the scene a short time later.

I

The defendant first claims that the court improperly admitted into evidence certain hearsay testimony under the spontaneous utterance exception to the hearsay rule. We disagree.

The following additional facts are necessary for our resolution of this claim. During the state's examination of Stewart, the court permitted the state to introduce evidence about another shooting incident that had occurred earlier in the evening on May 5, 1999. Stewart testified that, at around 8 p.m., he was standing in front of the nightclub located on Albany Avenue and saw the defendant, operating the gold Monte Carlo, drive past him and turn right onto Deerfield Street, a side street near the club. Stewart testified that, at that same time, he saw the victim walking along Deerfield Street. He further testified that he had heard the sound of two gunshots after the defendant turned onto Deerfield Street and that the victim "hit the ground" at that time.

Stewart recalled that, after the defendant drove away, the victim approached him. Stewart testified as to the victim's emotional state at that time; the victim was scared and shocked and his eyes were wide open. Stewart then stated that the victim told him that the defendant had fired the shots and that he was unsure as to the direction in which the defendant had fired his gun.[2]

The court admitted into evidence the testimony as to what the victim told Stewart about the shooting over the defendant's timely objection. The court ruled that the statement was a spontaneous utterance and thereby constituted an exception to the rule against hearsay. The defendant sought to exclude the testimony on the ground that the declarant, the victim, was not in a position to observe accurately what he related to Stewart. The defendant argued that Stewart's testimony regarding the shooting did not establish that the victim was able to observe the defendant shoot at him and that,

---

[2] Stewart recalled the victim's statement as follows: "After [the defendant] left, [the victim] came. I seen him. I said, 'Come here,' and tried to, you know, I asked him what happened. He say he didn't know if [the defendant] was shooting at him or in the air."

given the victim's unavailability, the state had failed to prove that the victim accurately observed the shooting.

We review the court's evidentiary ruling under an abuse of discretion standard. "[T]he trial judge must determine whether an utterance qualifies under this exception to the hearsay rule, and that decision will not be disturbed on appeal unless it constitutes an unreasonable exercise of discretion. . . . All material facts should be weighed by the trial judge when determining whether a statement qualifies as a spontaneous utterance." (Internal quotation marks omitted.) *State* v. *Torres*, 58 Conn. App. 524, 530, 754 A.2d 200 (2000); see also *State* v. *Kelly*, 256 Conn. 23, 42, 770 A.2d 908 (2001).

The spontaneous utterance exception permits an otherwise inadmissible hearsay statement to be admitted into evidence to prove the truth of the matter asserted therein if the movant can satisfy the following four conditions: "(1) the declaration follows some startling occurrence, (2) the declaration refers to the occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." (Internal quotation marks omitted.) *State* v. *Torres*, supra, 58 Conn. App. 530; see also Conn. Code Evid. § 8-3 (2) (exception applies to "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

Our Supreme Court recognized the spontaneous utterance exception in *Perry* v. *Haritos*, 100 Conn. 476, 124 A. 44 (1924). The Supreme Court explained: "The element of time, the circumstances and manner of the [event], the mental and physical condition of the declarant, the shock produced, the nature of the utterance, whether against the interest of the declarant or not, or

made in response to question, or involuntary, and any other material facts in the surrounding circumstances, are to be weighed in ascertaining the basic conclusion whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation. The principle rests upon the common experience that utterances made under such circumstances are void of self-interest and are in the same category as exclamations of pain. The probability of falsehood is so remote as to be negligible." Id., 484–85.

As our review of the principles that underlie the exception demonstrates, the application of the exception entails a uniquely fact bound inquiry. The overarching consideration is whether the declarant made the statement before he or she had the opportunity to undertake a reasoned reflection of the event described therein. *State* v. *Lomax*, 60 Conn. App. 602, 609, 760 A.2d 957, cert. denied, 255 Conn. 920, 763 A.2d 1042 (2000).

As we noted previously, in the present case the defendant claims that the state failed to prove that the victim had the opportunity to observe the defendant discharge his firearm.[3] That the declarant must have firsthand

---

[3] As part of his argument, the defendant appears to challenge the spontaneity of the victim's statement. He argues in his brief to this court that the victim "quite clearly engaged in a deliberate, reflective thought process because he chose between two alternatives: whether the defendant shot in the air or shot at him. Furthermore, not only did [the victim] deliberately choose between two alternatives, he selected the most sinister of the two alternatives in assuming that the defendant was trying to shoot at him. . . . It is thus apparent that [the victim's] utterance was not an unreflective and sincere expression of the facts just observed by him."

The defendant has raised this facet of his claim for the first time on appeal. "Our review of evidentiary rulings made by the trial court is limited *to the specific legal ground* raised in the objection. . . . To permit a party to raise a different ground on appeal than was raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party. . . . We have consistently refused to consider evidentiary rulings not properly preserved. Where the issue raised for the first time on appeal is a matter of state evidentiary law, rather than of constitutional significance, this court will deny the defendant appellate review." (Citation

knowledge of the occurrence is firmly rooted in the exception. As our Supreme Court has explained, the declaration must have been made "by one *having an opportunity to observe the matter of which he speaks,* and in such close connection to the event and under such circumstances as to negative the opportunity for deliberation and fabrication and to indicate that it was a spontaneous utterance growing out of the nervous excitement and mental and physical condition of the declarant . . . ." (Emphasis added.) *Perry* v. *Haritos,* supra, 100 Conn. 484.

Our Supreme Court recently had occasion to consider a similar issue. The Supreme Court stated that "although circumstantial evidence of the declarant's personal perception must not be so scanty as to forfeit the guarantees of trustworthiness which form the hallmark of all exceptions to the hearsay rule . . . the state is not required to establish such personal observation by the declarant beyond any possible doubt. Rather, the question for the trial court is whether a reasonable inference may be drawn that the declarant had personal knowledge of the facts that are the subject of his or her statement. . . . Consequently, [d]irect proof of observation is not necessary; if the circumstances appear consistent with opportunity [to observe] by the declarant, the requirement is met." (Citations omitted; internal quotation marks omitted.) *State* v. *Wargo,* 255 Conn. 113, 128–29, 763 A.2d 1 (2000).

We conclude that the trial court reasonably determined that the state adduced sufficient evidence to demonstrate that the victim's statements were a product of his firsthand observations of the defendant. Stewart testified as to having witnessed the defendant drive

omitted; emphasis added; internal quotation marks omitted.) *State* v. *Romero,* 59 Conn. App. 469, 477, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). Consequently, we decline to review the defendant's claim to the extent that he challenges the statement's spontaneity.

by the club and turn onto Deerfield Street, where the victim was walking. When the defendant's car turned onto Deerfield Street, two shots were fired. The victim immediately "hit the ground" when the shots were fired. Just moments later, the victim, in a shocked and emotionally excited state, identified the defendant as the shooter.

The sequence and substance of Stewart's firsthand observations, as well as his testimony as to how the victim reacted to the shots and what the victim stated immediately thereafter, provided ample evidence from which the court reasonably could have inferred that the victim's identification of the defendant as the shooter resulted from a firsthand observation of the defendant. Our Supreme Court has clearly stated that a moving party may prove personal knowledge "if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable." (Internal quotation marks omitted.) Id., 129 n.12. We conclude that that is the case here. The totality of the evidence concerning the making of the statement permitted the court's finding.

Additionally, the court was free to infer that the fact that the victim identified the defendant as the shooter just moments after the shooting and while still under circumstances that negated the opportunity for deliberation supported a finding that the victim did make a firsthand identification of the defendant. Our law exempts spontaneous utterances from the rule against hearsay because the circumstances under which such statements are made imbue them with inherent reliability. Although the spontaneous nature of the victim's statement does not automatically ensure that it resulted from his firsthand observation, the court was free to consider that factor, along with the myriad of others available to it, in reaching its conclusion. In other words, the victim's exactness in identifying the defen-

dant as the shooter may have buttressed the other cir-
cumstantial evidence that permitted the court to find
that the victim did have an opportunity to observe the
defendant discharge his firearm. The victim's ambiguity
as to the defendant's precise target is of no consequence
to our analysis.[4] The state did not seek, nor was it
required, to prove that the defendant tried to shoot the
victim at that time. Rather, the statement's relevance
bore on the issues in the present case because it was
proof that the defendant possessed a firearm and dis-
charged that firearm in the victim's vicinity just hours
before the shooting.

The defendant argues that *Johnson* v. *Newell,* 160
Conn. 269, 278 A.2d 776 (1971), should control our reso-
lution of the present issue. In *Johnson,* our Supreme
Court held that a certain statement did not fall under the
spontaneous utterance exception because the evidence
surrounding its making did not support a finding that
the declarant had an opportunity to observe the matter
described therein. See id., 278–79. Our Supreme Court
relied on the fact that the declarant had not witnessed
the underlying event but that he had only heard it.
Id., 278. The same cannot be said about the victim's
statement in the present case. As our Supreme Court
later explained, the test is whether the evidence sup-
ports a finding that the declarant had an opportunity
to observe the matters described in his or her statement.
*State* v. *Wargo,* supra, 255 Conn. 129. The victim's state-
ment did not suggest that the victim only heard what he
described. Rather, the victim described the defendant as
the person who fired the shots either at him or in the

---

[4] We are likewise not persuaded by the defendant's arguments that the
only reasonable inference permitted by Stewart's testimony was that the
victim heard, rather than witnessed, the shooting and that the victim's
identification was based on either speculation or conjecture. Our analysis
is complete once we determine that the circumstances appeared to have
afforded the declarant an opportunity to have observed that which he
described in his statement. See *State* v. *Wargo,* supra, 255 Conn. 129.

air. In the present case, also, Stewart testified as to the location of the defendant and the victim during the shooting itself. While this evidence could not prove beyond any possible doubt that the victim personally observed the defendant shoot his gun, it certainly afforded the court ample evidence from which to infer and to conclude that the victim had the opportunity to do so. Having heard the circumstances under which the victim made the statement, the jury was free to afford this competent evidence whatever weight it deemed appropriate in its deliberations.[5]

We conclude that the court properly exercised its discretion in admitting the victim's statement into evidence as a spontaneous utterance.

II

The defendant next claims that the court misled and confused the jury when it instructed it regarding the essential elements of intent and proximate cause. We disagree.

The following additional facts are necessary for our resolution of this issue. Both parties concede, and the

_____

[5] Even if we were to conclude that the court improperly admitted the challenged statement into evidence, our inquiry would not end. Where an improper evidentiary ruling does not implicate a constitutional right, the appellant bears the burden "to establish the harmfulness of the claimed impropriety." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 137, 773 A.2d 965 (2001). This inquiry asks whether the court's improper ruling more likely than not affected the result of the trial or caused the defendant substantial prejudice. See *State* v. *Harris*, 60 Conn. App. 436, 441–42, 759 A.2d 1040, cert. denied, 255 Conn. 907, 762 A.2d 911 (2000). We conclude that the defendant has failed to demonstrate harm in either regard for several reasons. Stewart's account of the incident constituted independent evidence of what the victim told Stewart. The jury would have been able to evaluate this evidence and, even without having heard the victim's statement, would likely have reached the conclusion that the defendant had fired at or near the victim. Also, the shooting incident did not serve as the basis for the defendant's conviction. It merely provided additional evidence, apart from other ample evidence, to demonstrate the defendant's motive and intent.

record reflects, that the court properly instructed the jury on the essential element of intent.[6] After it delivered its instruction on intent, the court instructed the jury on the essential element of proximate cause.[7] In its instruction on causation, the court stated: "It does not matter whether this particular kind of harm that results from the defendant's act be intended by him." After instructing the jury as to intent and proximate cause, the court read the relevant text of § 53a-54a and further

---

[6] The court instructed the jury in relevant part: "Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally, with respect to a result, when his conscious objective is to cause such result. Intentional conduct is purposeful conduct, rather than conduct that is accidental or inadvertent. The existence of intent is a fact for the jury to determine. It must be proved beyond a reasonable doubt.

"What a person's purpose, intention, or knowledge has been is usually a matter to—to be determined by inference. No person is able to testify that he looked into another person's mind and saw therein a certain purpose or intention or a certain knowledge to do harm to another.

\* \* \*

"In this case, therefore, it will be part of your duty to draw all reasonable and logical inferences from the conduct you find the defendant engaged in, in light of the surrounding circumstances, and from this, determine whether the state has proven the element of intent beyond a reasonable doubt."

[7] The court instructed the jury in relevant part: "The state must prove beyond a reasonable doubt that the defendant caused certain results. Proximate cause does not necessarily mean the last act of cause or the act in point of time nearest to the death and the injury.

"The concept of proximate cause . . . incorporates the notion that an accused may be charged with a criminal offense, even though his acts were not the immediate cause of death and the injury.

"An act or omission to act is a proximate cause of the death and the injury when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient intervening cause, to the death and the injury. It is a cause, without which, the death and injury would not have occurred, and a predominating cause, a substantial factor from which the death and injury follow as a natural, direct and immediate consequence.

"It does not matter whether this particular kind of harm that results from the defendant's act be intended by him. When the death and injury caused by the defendant's conduct are a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible."

instructed the jury on intent.[8] It stated, inter alia, that "[t]he state must prove beyond a reasonable doubt that the defendant, in causing the death of the victim, did so with the specific intent to cause death."

The defendant argues that the court's proximate cause instruction, in which it stated that intent was not required, contradicted its instruction that the state had to prove beyond a reasonable doubt that the defendant intended to cause the victim's death. As a result, the defendant argues that the court's charge confused and misled the jury. The defendant did not take exception to the court's instruction at trial and seeks appellate review of this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harm-

---

[8] The court instructed the jury in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or a third person.

"To establish the defendant's guilt, the state must first prove that this defendant, Troy Westberry, caused the death of Anthony Bennefield. You must find proven beyond a reasonable doubt that Anthony Bennefield died as a result of the actions of the defendant.

"The state must also prove beyond a reasonable doubt that the defendant caused the death of Anthony Bennefield with the intent to cause the death of Mr. Bennefield or a third person. I refer you to my previous instruction[s] on intent and proximate cause, which are applicable here.

"Again, the state must prove beyond a reasonable doubt that the defendant caused the death of the victim with the intent to cause death. I have previously discussed the issue of intent required for this offense. The state must prove beyond a reasonable doubt that the defendant, in causing the death of the victim, did so with the specific intent to cause death."

lessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Internal quotation marks omitted.) *State* v. *Jones*, 65 Conn. App. 649, 653, 783 A.2d 511 (2001).

The claim is reviewable because the record affords this court an adequate basis on which to review the claim and the claim is constitutional in nature.[9] We conclude, however, that the claim fails under *Golding*'s third prong because the defendant has failed to demonstrate that a constitutional violation clearly exists that deprived him of a fair trial.

"[I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 161, 778 A.2d 955 (2001). As we undertake this inquiry, "the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) *State* v. *Whipper*,

---

[9] "Not every improper jury charge . . . results in constitutional error." *State* v. *Schiappa*, 248 Conn. 132, 165, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). It is, however, well settled that claims of instructional error as to the essential elements of a crime are constitutional in nature. Claims in this category implicate "the possibility of a due process violation affecting the fairness of the trial." *State* v. *McMurray*, 217 Conn. 243, 253, 585 A.2d 677 (1991).

258 Conn. 229, 291, 780 A.2d 53 (2001). Stated otherwise, "[t]he test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 296.

*State* v. *Boles*, 223 Conn. 535, 613 A.2d 770 (1992), controls our resolution of this issue. The defendant in *Boles* claimed on appeal that the trial court had misled and confused the jury on the essential element of intent for the crime of murder. Id., 540. The trial court in *Boles* delivered an accurate instruction on intent and, during its instruction on the essential element of causation, stated: "It's not necessary that the particular kind of harm that results from the defendant's act be intended by him *or* the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct. The law considers the chain of legal causation unbroken and holds the defendant criminally responsible." (Emphasis in original; internal quotation marks omitted.) Id., 541. Subsequent to delivering this instruction, the trial court again instructed the jury on the element of intent. Id., 542.

Our Supreme Court rejected the defendant's claim that the court's instruction on causation impermissibly relieved the state of its burden of proving that the defendant committed murder only if he intended to cause the victim's death. Id., 540. As the Supreme Court explained: "The section of the trial court's instruction in question could only be misinterpreted as informing the jury that to find the defendant guilty of the victim's murder it had only to find proven that the defendant was the source of the conduct that caused her death, if we were to view the charge in isolation from what immediately preceded it. Viewing this portion of the charge in such isolation, however, would be completely unjustified" because the court fully and accurately instructed the jury on the element of intent before it delivered the

instruction on the element of causation of which the defendant complained. Id., 541–42. "If the trial court has given a preliminary instruction on the element of intent, the subsequent use of [language describing the element of causation] cannot be viewed in isolation. The instruction neither eliminates the element of intent, nor substitutes causation therefor." *State* v. *Francis*, 228 Conn. 118, 130–31, 635 A.2d 762 (1993); see also *State* v. *Dillon*, 34 Conn. App. 96, 102–103, 640 A.2d 630 (1994), rev'd on other grounds sub nom. *State* v. *Carter*, 232 Conn. 537, 656 A.2d 657 (1995).

We find very little to distinguish *Boles* from the present case.[10] As did the trial court in *Boles*, the court in the present case accurately instructed the jury as to intent prior to delivering its instruction as to causation. The instructions on causation in both cases accurately instructed the jury that the state, in order to prove causation, did not need to prove that the defendant intended to cause the particular type of harm that resulted from his actions. See, e.g., *Craig* v. *Driscoll*, 64 Conn. App. 699, 711–12, 781 A.2d 440, cert. granted on other grounds, 258 Conn. 931, 785 A.2d 228 (2001). In both cases, the court thereafter instructed the jury that "it had to find proven that the defendant intended to cause the victim's death before it could convict him of murder." *State* v. *Boles*, supra, 223 Conn. 543.

Having reviewed the court's entire charge, we are satisfied that, given its structure and content, it is not

___

[10] The only relevant difference between the two cases appears to be that, in the present case, the trial court made reference to its proximate cause instruction during one of its subsequent explanations of the specific intent for murder. It merely stated: "I refer you to my previous instruction[s] on intent and proximate cause, which are applicable here." We find this difference to be of no consequence. The court did not reiterate its instruction on causation at that point, and the record reflects that the court stated numerous times, even in direct proximity to that statement, that the state bore the burden of proving beyond a reasonable doubt that the defendant acted with the specific intent of causing the victim's death.

reasonably possible that it misled or confused the jury as to the necessary elements of intent or causation. While we need not restate each and every such instance in this opinion, it suffices to note that the court, on numerous occasions, made the need to find intent clear. As the court in *Boles* concluded: "In the context of the court's instructions concerning intent and causation, it would strain reason to believe that the jury could have heard the challenged instruction as eliminating the element of intent. We believe that construed reasonably in context the meaning conveyed was that obviously intended by the trial court; that is, that the jury, in order to convict the defendant of murder, had to find proven both that the defendant intended to cause the victim's death and that his conduct was, in fact, the proximate cause of her death." Id., 542.

The defendant's claim fails under *Golding* because he has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.