MARGARET ESPOSITO *v.* HOSPITAL OF ST. RAPHAEL

INGLIS, C. J., BALDWIN, O'SULLIVAN and DALY, Js.[1]

Argued December 8, 1954—decided January 25, 1955

[1] By agreement of counsel the case was argued before and decided by four judges.

*John E. McNerney,* with whom, on the brief, was *Francis J. Moran,* for the appellant (defendant).

*William J. Cousins,* with whom was *James A. Varrone,* for the appellee (plaintiff).

O'SULLIVAN, J. The plaintiff brought this action to recover damages for injuries sustained in a fall occasioned by her tripping against a mat in the defendant's hospital. The jury returned a plaintiff's verdict, upon which the court rendered judgment. The defendant has appealed, assigning various grounds of error, but, under the view which we take, it will be necessary to discuss only one. This deals with a ruling on evidence.

The plaintiff offered evidence to prove the following facts: On May 20, 1951, and for many years prior thereto, the defendant owned and was in control of premises at which it maintained a hospital. There were, at the main entrance, double glass doors opening upon a foyer. Spread over the terrazzo floor near the entrance were two link mats, so arranged that a visitor entering the building and proceeding up the stairs to the main lobby would walk across first one and then the other. Each mat was nine feet by five, weighed over one hundred pounds, was composed of sections of rubber joined together with brass wire, was flexible and would not slip or move under ordinary traffic. Unless the mat

was kicked up, it would lie flat even if it was worn on the edges or on the links. The mats had been in constant use since 1947 and approximately 1000 people walked upon them daily. The floor of the foyer was swept every morning. During this process the mats were not removed but were rolled over about one-half way and the floor underneath cleaned. The mats were then rolled back, and a similar procedure was followed to clean under the other half.

On May 20, 1951, the plaintiff, accompanied by her husband, now deceased, went to the hospital to visit a patient. Upon reaching the main entrance, the plaintiff pulled open the right-hand door and her husband held it as she entered. While she was moving ahead, the toe of her shoe caught under the "curled up" edge of the mat nearest the door. This caused her to fall and sustain severe injuries.

Since the foyer was under the control of the defendant, its duty was to use reasonable care to keep the foyer in a reasonably safe condition for those entering the hospital as invited visitors. *Morris* v. *King Cole Stores, Inc.,* 132 Conn. 489, 492, 45 A.2d 710. If, after having had notice of the defective condition relied on, the defendant failed to meet that duty, an injured person who was himself in the exercise of due care would be entitled to recover. *Smeriglio* v. *Connecticut Savings Bank,* 129 Conn. 461, 462, 29 A.2d 443.

In the case at bar, the plaintiff assumed the burden of proving, first, that the mat created a defective condition which rendered it not reasonably safe for the plaintiff to pass over, and secondly, that the defendant had notice of the condition but failed to use reasonable care to rectify it. The plaintiff, apparently unable to prove actual notice of the alleged defect, sought to establish constructive notice by

calling her son, Caspar, as a witness. He testified that three days after his mother's accident he had gone to the hospital with his father. The latter pointed out the place where the plaintiff had fallen. Over the objection of the defendant, Caspar was then permitted to testify that he found the edge "curled up" for a distance of about four inches, on that part of the mat which lay in the path one would take upon passing through the right front door.

The plaintiff's claim upon this evidence was that, since the witness found the mat "curled up" on May 23, it had been in the same condition not only when his mother fell on May 20 but also for a sufficient time prior thereto to furnish the basis of constructive notice to the defendant. This reasoning indulges in a non sequitur. It is true that where, from the nature of the situation, a condition is of such a permanent character that a lapse of time would not make a material difference and it would be improbable that change had occurred, testimony as to conditions after the happening of an event is relevant to show the conditions existing at the time of it. *Johnson* v. *Charles William Palomba Co.*, 114 Conn. 108, 114, 157 A. 902; 1 Jones, Evidence (4th Ed.) p. 288, § 164. This rule is especially pertinent when the subject of inquiry is a permanent structure which would not be likely to change. Ibid.; see *Hawley* v. *Rivolta*, 131 Conn. 540, 545, 41 A.2d 104; *Dyson* v. *New York & N.E.R. Co.*, 57 Conn. 9, 24, 17 A. 137; *Reading Co.* v. *Geary*, 47 F.2d 142, 144; 2 Wigmore, Evidence (3d Ed.) § 437; 20 Am. Jur. 284, § 306. The rule, however, is not apt to the facts in the case at bar. There was no permanency to the position of the mat on which the plaintiff tripped. On each of the three days intervening between her fall and the visit of her son to the hospi-

tal, the mat was rolled up and replaced. Because of its flexibility and its ability to lie flat even though worn on the edges or on the rubber links, whatever "curled-up" condition existed when the plaintiff fell would have been eliminated. If the plaintiff's son saw the mat curled up on May 23, it could not have been the same curling up as existed three days before. The court was in error in admitting the testimony, and we view the error as harmful.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.