DECISION ON APPEAL
WILSON, Judge.
The plaintiff initiated this civil action to recover damages for personal injuries he sustained in a fall at the Mohegan Sun Casino, a gaming facility operated by the Defendant. From a judgment in favor of the defendant, the Plaintiff appealed to this Court. We affirm.
I.
The background and the findings of fact as reported in the decision of the trial *494 court (Mariano v. MTGA, 2 G.D.R. 130, 6 Am. Tribal Law 541, 2005 WL 0238998 (2005) (Eagan, J.)) are as follows:
BACKGROUND
At approximately 10:00 p.m. on February 1, 2003, the plaintiff, AJcides Mariano, was a patron at the Mohegan Sun Gaming Casino. While walking through the entrance way to the Sky Casino, he fell, landing on his right hand, wrist and forearm, which resulted in severe injuries.
The plaintiff claims that the defendant, Mohegan Tribal Gaming Authority (“MTGA”) was negligent in that the floor to the entrance way was covered with litter, debris and other substances, which were allowed to remain there creating an unsafe condition. The defendant has admitted that the plaintiff was a patron/invitee lawfully on the premises operated, maintained and controlled by the defendant. The defendant denies the allegation that the cause of the injury was negligence on its part and filed a special defense relying on contributory negligence and the actions of a third party.
FINDINGS OF FACT
1. On February 1, 2003, at approximately 10:00 p.m., the plaintiff was a patron/invitee at the Mohegan Sun Gaming Casino.
2. While walking in the entrance to the Sky Casino, he fell, severely injuring his right hand, wrist and forearm. His right arm is his major arm.
3. All of the evidence introduced, including the video of the incident, clearly showed that the area of the fall was clean and in a litter and substance free condition.
4. The plaintiffs fall, while regrettable, was not attributable to litter, debris or-any substance on the floor.
5. While the plaintiff was walking through the entry way, he was inadvertently bumped by a female patron, which diverted his attention and resulted in the fall.
6. Plaintiff stated to the security officer, who arrived on the scene of the fall within minutes after the incident, that “another person bumped into him causing him to lose his footing and fall to the ground injuring his right wrist.” The same security officer also noted no defects and that the area was clean of debris.
7. Plaintiffs resulting injuries were severe; he lost time from work and his disabilities are not exaggerated.
The video to which the court referred was a copy of portions of a digitally recorded surveillance video. Such surveillance videos are routinely made and cover large areas of the casino. (See the opinion of this court in Miller v. MTGA, 1 G.D.A.P. 39, 6 Am. Tribal Law 487, 2006 WL 6174089 (2006)). After the plaintiff's fall was reported, the video was “dubbed” (copied) onto a video tape. Approximately two minutes of time following the plaintiffs fall is missing from the video tape. The video in this case showed the scene of the fall for a period of time prior to the fall, and the plaintiffs fall. A copy of the tape was subsequently turned over to plaintiffs counsel and was introduced by the plaintiff during the trial.
At trial, the plaintiff proffered the testimony of one Mr. Gil, a private investigator hired by the plaintiff. In his offer of proof the plaintiff asserted that Mr. Gil would testify that he visited the scene of the plaintiffs fall on about eight occasions, approximately two years after the plaintiff fell. Mr. Gil documented debris on the floor on each of those occasions. The plaintiff offered this testimony as relevant *495 to a continuing course of conduct, or, (as the plaintiff now phrases it) a method of operation of the defendant, which would tend to prove that there was debris on the floor when the plaintiff fell. The court granted the defendant’s motion in limine to preclude Mr. Gil’s testimony, on the grounds that his observations two years after the fact were not relevant, i.e., that the inference which the plaintiff sought would be based on possibilities, surmise, or conjecture, and therefore, inadmissible. Hennessey v. Hennessey, 145 Conn. 211, 214-215, 140 A.2d 473 (1958).
The trial court found that:
[There] was no evidence of any debris or substance on the floor where the plaintiff fell. The video tape introduced in evidence shows a clear floor.
The video also shows the plaintiffs attention being diverted when he was accidentally bumped by a female patron and then the subsequent fall....
There is no evidence from which the court can conclude that the defendant was negligent or in any way breached a duty owed to this plaintiff.
From the judgment entered for the defendant, the plaintiff has appealed.
II.
On appeal the plaintiff assigns as grounds for reversal two rulings of the trial court. First, that the “trial court erred in refusing to allow the plaintiff to present evidence concerning the defendant’s method of operation,” i.e., in excluding the testimony of Mr. Gil; and second, “that the trial court erred in drawing an inference from the defendant’s video tape.”

A.

1.
The plaintiff argues that the trial court erred in excluding the testimony of Mr. Gil, who would have, according to the offer of proof, testified that when he inspected the defendant’s premises approximately two years after the plaintiffs fall, he observed,- on about eight different occasions, debris on the floor in the area where the plaintiff fell. The plaintiff contends that the trial court erred in relying on Hennessey v. Hennessey, Id, because the Hennessey court made a distinction between the duty of care which a defendant owes to a social guest as distinct from a business invitee. Here, unlike Hennessey, the plaintiff was a business invitee, and at the time Hennessey was decided, a higher degree of care was owed to the business invitee than was owed to a social guest.[1]
That distinction is immaterial to the issue in this case. Here the trial court correctly found that the plaintiff was a business invitee to whom the defendant owed the higher degree of care and the court properly restated the standard of care owed to the plaintiff. 2 G.D.R. 136, 137, 6 Am. Tribal Law 541, 2005 WL 6238993. That standard is to inspect the premises and keep them reasonably safe. Id Neither the plaintiff nor the defendant in this case dispute that. Rather, the issue here is the relevancy of Mr. Gil’s testimony. The Hennessey court’s discussion of the relevancy issue was completely independent of the issue of the standard of care owed by the defendant. The rule as to relevancy is the same whether the plaintiff is a social guest or a business invitee; indeed, it would be the same even if a particular plaintiff were a mere licensee or even a trespasser. Therefore, the distinction which the plaintiff notes in the Hen-nessey case is one without a difference.
The issue in this case is the relevance of Mr. Gil’s proffered testimony. *496 “Although relevancy and inferences are sometimes discussed as separate rules, they involve the same concept, viz., the evidence offered or the inference suggested must tend to make the existence of another fact more probable than otherwise.” Colin C. Tait, Tail’s Handbook of Connecticut Evidence, § 4.3.1. (3d Ed.2001). While the trial court is entitled to draw reasonable and logical inferences based on the facts proven, they should be based on probabilities, not possibilities, surmise or conjecture. Hennessey v. Hennessey, supra. Further, they are permissive; they may or may not be drawn by the trier of fact. Tait, op. cit. Finally, the trial judge has discretion in excluding evidence, even though it may be relevant. “Thus, while irrelevant evidence is never admissible, relevant evidence may be rejected if its probative value is outweighed by such factors as time, confusion, or prejudice.” Tait, Id. at § 4.8.1. In this case, the trial court was well within its discretion in concluding that it would be improper to draw any inference from evidence of transitory conditions on sporadic occasions some two years after the fact. See Esposito v. Hospital of St. Raphael, 142 Conn. 95, 111 A.2d 545 (1955) (evidence of transitory condition three days after the Plaintiffs fall held not admissible).
2.
The plaintiff also contends that Mr. Gil’s testimony should have been admitted under a theory of liability which the plaintiff terms the “method of operation” theory of negligence as cited in the case of Meek v. Wal-Mart Stores, Inc., 72 Conn. App. 467, 806 A.2d 546 (2002). The defendant contends against the adoption of this theory on both procedural and substantive grounds, including the plaintiffs failure specifically to assert this theory in the trial court. We do not find it necessary to decide whether the “method of operation” theory should be adopted because the essential foundation for invoking the “method of operation” theory of liability is lacking in this case.
The Meek case seems to impose liability on an occupier of land where its “method of operation creates a situation where it is reasonably foreseeable that the expectable acts of third parties will create a dangerous condition or defect.” 72 Conn.App. at 478, 806 A.2d 546 (emphasis added.) To understand the impact of this theory of liability it is helpful to review the basis for liability of an occupier of land to its invitees who are injured on premises under its control. The defendant in such a case is under a duty to use reasonable ('are to keep its premises in a reasonably safe condition for those entering as invited visitors. Esposito v. Hospital of St. Raphael, supra at 97, 111 A.2d 545. “If, after having notice of the defective condition relied on, the defendant failed to meet that duty, an injured person who was himself in the exercise of due care would be entitled to recover.” Id.
The plaintiff has the burden of proving the existence of a defective condition which rendered the premises not reasonably safe, and that the defendant had notice, either actual or constructive, of the condition, but failed to use reasonable care to rectify it. Id. “Either type of notice must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it ... If the plaintiff, however, alleges an affirmative act of negligence, ie., that the defendant’s conduct created the unsafe condition, proof of notice is not necessary.” Meek v. Wal-Mart Stores, Inc., supra, at 474, 806 A.2d 546. Meek then notes that there is “no logical distinction between [this] situation in which the *497 storeowner directly creates the condition or defect, and where the store owner’s method of operation creates a situation where it is reasonably foreseeable that the expectable acts of third parties will create a dangerous condition or defect.” Id., at 478, 806 A.2d 546. That is, the “method of operation” theory will displace the “creation of condition or defect” theory, and will dispense with the requirement that the plaintiff prove either actual or constructive notice of the condition or defect.
(9,10] But in any such case, under any theory of liability, the plaintiff still has the burden of proving, first, that he was injured as a result of some dangerous condition or defect. In this case, the trial court found that the plaintiff failed to prove that he was injured as a result of any such condition or defect. There was, therefore, no need for the trial court to determine if the defendant had any notice of any such condition, or whether its method of operation may have created such condition— there was no such condition in the first place. The court did not err in excluding Mr. Gil’s testimony, because the court found, as a matter of fact, that there was no unsafe condition. The plaintiffs argument in support of Mr. Gil’s testimony begs the question—the testimony was offered to attempt to prove the existence of a defective condition, but the theory offered to support the admissibility of the testimony assumes the existence of just such a condition. The “method of operation” theory dispenses only with the need to prove notice of the condition; it does hot relieve the plaintiff of the burden of proving the existence of the condition.

B.

;. The plaintiffs second ground of appeal is “that the trial court erred in drawing an inference from the defendant’s video tape.” There are two aspects to this argument.
1.
The plaintiff asserts that:
The court finds that the video tape shows no evidence of debris but shows the plaintiff being bumped into. What the video tape does not show is the two minutes of time missing immediately following the plaintiffs fall ... The court therefore has to draw an inference that the inspection of the premises for debris took place, as well as the plaintiffs statement to (the Defendant’s agent) Goodrich concerning how he fell, both took place during this lost two minute period of time. The plaintiff is prejudiced by this inference.
There is no support in the record for this claim. There is nothing in the trial court’s decision to indicate one way or the other that the court drew, or failed to draw, any inferences concerning the lost two minute period of time.
This court, therefore, does not consider this claim. If the plaintiff were to claim that the trial court should have drawn some negative inference from the “lost two minute period of time,” we note that such a claim has been considered and rejected in Miller v. MTGA, 1 G.D.A.P. 39, 6 Am. Tribal Law 487, 2006 WL 6174089 (2006) (inference is permissive, not mandatory) Id. at 42 n. 19, 6 Am. Tribal Law at 491, 2006 WL 6174089.
2.
The plaintiffs second claim is that the “Court then draws an inference that there is no debris on the floor and that the plaintiff stated that he fell, even though the defendant’s agent could not remember when he was told this or produce any verifiable evidence from the video tape.” Using the term “inference” in its most rudimentary meaning, this court agrees *498 that the trial court did “infer,” i.e., conclude, from the viewing of the direct evidence of the tape, that the tape did not show any, debris on the floor. This “inference” was reasonable, logical, based on all probability, and hence an entirely permissive inference for the court to draw. See e.g., Miller v. MTGA, 1 G.D.A.P. 89, 6 Am. Tribal Law 487, 2006 WL 6174089 (2006).
The judgment is affirmed.[2]

. That distinction was statutorily abolished in 1963. Conn. Gen.Stat. Sec. 52-557a.

, Mant'redi, J., did not participate in the ap-peliáte proceedings.