MEMORANDUM OF DECISION ON DEFENDANT, MOHEGAN TRIBAL GAMING AUTHORITY’S, MOTION FOR SUMMARY JUDGMENT
WILSON, Judge.
I.
In his Fourth Amended Complaint, the Plaintiff has alleged that on November 23, 2003, while he was a patron at the Mohegan Sun Casino, (a gaming facility operated by the Defendant), he was caused to fall off an escalator and thereby sustained very serious personal injuries, for which he seeks damages. He alleges that his injuries were caused by the Defendant in one or more of the following ways:
“5. The plaintiff, Jeffrey Murphy’s injuries and damages were caused by the negligence and carelessness of the defendant, Mohegan Sun, their agents, servants and/or employees, in one or more of the following ways, in that they:
a. Failed to inspect the escalator where the plaintiff sustained injuries to ensure that it was safe for use by patrons, including the plaintiff;
*429 b. Failed to repair and/or maintain the escalator in question to ensure it was sate for use by patrons, including the plaintiff;
c. Failed to place any warnings signs or barriers to prevent the plaintiff from using the escalator;
d. Failed to adequately and properly train its employees in safety, maintenance and inspection procedure of the escalators;
e. Permitted said condition to exist for such a period of time that the defendant knew, or should have known, of the existence of the defective condition of the escalator that failed to remedy and correct the same;
f. Failed to adequately train and supervise its security staff and personnel;
g. Hired security personnel who were not qualified to provide adequate security for patrons and business invitees upon its property;
h. Failed to investigate the backgrounds of their security personnel to assure their qualifications and thus train accordingly to ensure adequate and proper security on its premises;
i. Failed to provide proper security for patrons and business invitees upon its property; and
j. Failed to provide sufficient security personnel for patrons and business invitees on its property;”
This court has jurisdiction under the Constitution of the Mohegan Tribe of Indians of Connecticut, Art. XIII, Secs. 1 and 2; under the Gaming Disputes Court Ordinance, MTC § 3-21 et seq.; and under the Mohegan Torts Code, MTC § 3-241, which is the primary substantive law applicable to this action.
The Defendant has moved for summary judgment as follows:
“Pursuant to G.D.C.P Section 49, the Mohegan Tribal Gaming Authority respectfully moves this court to enter judgment in its favor on the grounds that there are no genuine issues of material fact. Further, the Mohegan Tribal Gaming Authority did not owe a legal duty to the plaintiff as his injuries were not reasonably foreseeable and any alleged acts or omissions of the Mohegan Tribal Gaming Authority were not the proximate cause of the plaintiffs injuries. A detailed Memorandum of Law has been filed in support of this Motion.”
Briefs and supporting documents have been filed by both parties and oral argument has been had. After consideration of the briefs, documents, and oral argument, the court finds that there are genuine issues as to some material facts and that the Defendant is not entitled to judgment as a matter of law. The Defendant’s Motion is denied.
II.
The law applicable to this motion is the substantive law of the Mohegan Tribe which includes inter alia, the Mohegan Torts Code, and the statutory and common law of the State of Connecticut, except if such statutes or common law are in conflict with Mohegan Tribal Law. MTC §§ 3-51, 3-52.
The Mohegan Torts Code contains several provisions which are specifically applicable to this case. MTC § 3-245 contains the following: “Duty means an obligation to which The Mohegan Tribal Courts are authorized to give legal recognition and effect to conform to a particular standard of conduct.” “Fault means the failure to fulfill a legal duty. It includes acts proximately causing or substantially contributing to injury or damages.” “Injury means the invasion of any legally protected interest of a person or a loss of any kind to a *430 person.” “Negligence means conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances.” “Person means any individual, firm, partnership, corporation, or association.” “Tort means an injury to a person caused by a breach of legal duty to that person, but does not include a breach of a duty imposed by contract. (Ord. No.2005-02, § 5, 6-22-2005).”
The Defendant’s Motion for Summary Judgment was filed pursuant to G.D.C.P. Sec. 49 which provides as follows:
“ § 49. Summary Judgment
a. Summary Judgments—Triable Issue as to Damages Only. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to damages.
b. Filing Motion. Any party may, at any time prior to the assignment of a case for trial, move for summary judgment, and with the permission of the court may file such motion after the case has been assigned for trial. These rules shall be applicable to counterclaims and cross-complaints. The pendency of a motion for summary judgment shall delay trial only at the discretion of the trial judge.
c. Proceedings on Motion. A motion for summary judgment shall be supported by such documents as may be appropriate including affidavits, depositions, disclosures, written admissions and like documents which show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party shall file opposing affidavits or other documentary evidence as provided in this rule within the time set forth in § 15d, setting forth specific facts showing that there is a material issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
d. Form of Affidavits. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto.
e. When Appropriate Documents Unavailable. Should it appear from affidavits of a party opposing a motion for summary judgment, that he cannot, for reasons stated in an affidavit filed with the court, present facts essential to justify his opposition, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
f. Affidavits made in bad faith. Should it appear to the satisfaction of the court at any time that any affidavit is made or presented in bad faith or solely for the purpose of delay, the court shall forthwith order the offending party to pay to the other party the reasonable expenses which the filing of the affidavit caused him to incur, including attorneys fees, and any attending party or attorney may be adjudged guilty of contempt.
g. Judgment. Judgment shall be rendered forthwith if the pleadings and any other proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.”
*431 “In passing on a Motion for Summary Judgment, the trial court is to determine whether an issue of fact exists, but may not try that issue if it does exist.” Wallace v. MTGA, 2 G.D.R. 51, 5 Am. Tribal Law 295, 2004 WL 5660109 (2004). The Gaming Disputes Court looks to Connecticut law on Summary Judgment. Ibid. The trial court must view the evidence in the light most favorable to the non-moving party, here, the Plaintiff. Ibid.

Ill

In its briefs, supporting documents, and argument, the Defendant claims that there was “no duty, breach of duty, or proximate cause” and that there is no genuine issue as to any material fact. The Defendant certainly cannot contend that there was no duty whatsoever to the Plaintiff. Since the casino was under the control of the Defendant, its duty was to use reasonable care to keep the premises in a reasonably safe condition for those, like the Plaintiff, entering the premises as invited visitors. Esposito v. Hospital of St. Raphael, 142 Conn. 95, 97, 111 A.2d 545 (1955). Rather, the issue here concerns the extent of the Defendant’s duty. The Defendant contends that “there was no duty because the general nature of the Plaintiffs injuries were not foreseeable and public policy considerations weigh heavily against imposing a duty” on the Defendant, citing, inter alia, Jaworski v. Kieman 241 Conn. 399, 405, 696 A.2d 332 (1997). The Defendant claims that the injury was not foreseeable because there was no evidence that any accidents of this nature have ever occurred at the casino. The Defendant also claims that even if there was a breach of any duty, it was not the proximate cause of Plaintiffs injuries, i.e., not a substantial factor in producing the result, citing inter alia Paige v. St. Andrew’s Roman Catholic Church Corp., 250 Conn. 14, 734 A.2d 85 (1999). The Defendant has submitted extensive documentation by way of deposition testimony of the Plaintiff and Earl J. Palmer, Jr., and Jeremy Bosma, friends of the Plaintiff and witnesses to the accident. The Defendant also submitted a videotape recording of the accident.
The Plaintiff contends that the lack of evidence of any prior similar accident is not determinative as to the issue of foreseeability, or of the existence of a duty, citing, inter alia, Monk v. Temple George Associates, LLC 273 Conn. 108, 869 A.2d 179 (2005). The plaintiff also submitted the deposition testimony of Bosma and Palmer, as well as the report of an expert witness, one Alan H. Baxter, in objecting to the summary judgment, and claiming there are factual issues as to the proximate cause of the fall.
The Plaintiff stated the gist of his claim as follows:
“The Plaintiff fell off the escalator located just past Big Bubba’s Barbecue Restaurant. In that section of the casino there are five bars and restaurants, Big Bubba’s Barbecue Restaurant, Jasper White’s summer Shack, Ultra 88 Night Club, the Dubliner, and Lucky’s Lounge. The defendant cannot state that it does not have reason to foresee that people will drink in this area of the casino, given the fact that all five of the above establishments serve alcohol. Moreover, the defendant can foresee that patrons at these establishments may on occasion drink to excess, and use the escalator just outside of Big Bubba’s Barbecue Restaurant. The defendant, however, maintains that it has no duty to prevent intoxicated persons from using the escalator or warning its patrons to be careful when using the escalator. Finally, Earl Palmer testified that the only Mohegan employee posted by the escalator was stationed at the bottom of *432 the escalator. (Deposition of Earl Palmer page 44).”
The Plaintiffs witness Baxter phrased the claim as follows:
“Third, because of the proximity of the drinking establishments to this escalator, it would have been prudent to have a security officer on roving patrol with an area of responsibility within immediate response distance to the escalator. Defendant managers have testified that they receive training on the recognition and handling of intoxicated persons, and it therefore seems only reasonable that such a security officer could be trained and briefed to be on watch for intoxicated persons, and either escort them down the escalator or otherwise take action to ensure their safety.”
To determine whether an issue of fact exists, the Plaintiffs claims will be broken down into two categories. These claims, (quoted in full in Part I of this opinion) relate to the allegedly defective condition of the escalator (Paragraphs 5.a—e); and to the training, supervision, and proper provision of the Defendant’s security staff and personnel (Paragraphs 5.f.—j). These will be separately considered.
16. The Condition of the Escalator
Paragraphs 5.a.—e. of the complaint relate to the allegedly defective condition of the escalator from which the Plaintiff fell. These allegations are essentially identical to allegations contained in a count in a prior complaint filed in this case against a previous co-Defendant, Otis Elevator, Co. (“Otis”). There, this court granted a motion for summary judgment in favor of the then co-Defendant Otis. Murphy v. MTGA, 2 G.D.R. 129, 6 Am. Tribal Law 531, 2005 WL 6239000 (2005). The court went through each and every allegation of negligence (the same as those alleged in paragraphs 5.a.—e. here), and considered all the documentary evidence, including the videotape of the incident previously referred to. The court held that there was no evidence whatever that the escalator was in a defective condition and no evidence of any negligence on the part of Otis with respect to the condition of the escalator. There was therefore, no genuine issue as to any material fact and Otis was entitled to summary judgment as a matter of law. Id. at 135, 6 Am. Tribal Law 531.
In that proceeding there was no evidence that the Defendant here, the MTGA, was in any respect negligent with regard to the condition of the escalator. In this proceeding the Plaintiff has not proffered any evidence on the issues raised in paragraphs 5.a.—e. The issues therefore, are res judicata and may not be re-litigated in this proceeding. Virgo v. Lyons 209 Conn. 497, 551 A.2d 1243 (1988).
There is, however, one further point to be considered. In the report of Mr. Baxter, this witness introduced, for the first time in this proceeding, the notion that “it would have been prudent to explore the attachment of Plexiglas fall shields to the sides of the elevator (sic.)” (Baxter Preliminary Opinion P. 21). This report was dated and filed June 29, 2007, long after the Defendant’s motion was filed, long after briefs had been filed and oral argument scheduled, and only days before oral argument. The Defendant objects to consideration of the “Plexiglas” opinion because of its un-timeliness with respect to Defendant’s Motion for Summary Judgment. The Defendant also objects to consideration of the Plexiglas opinion on the ground that “in granting the Motion for Summary Judgment filed by Otis Elevator, the court has already concluded that there was nothing wrong with the escalator in question. Any claim of a design defect would have and should have *433 been brought against Otis in a timely fashion and not against the MTGA three years after the filing of the complaint.” The court agrees with the Defendant on this issue. Whether there was any negligence with regard to the Plexiglas panels should have been raised in the litigation against Otis. The complaint there, as in the complaint here, alleged a defective condition in the escalator, and negligence in failing to inspect, repair and/or maintain the escalator, failing to place warnings, signs, or barriers to prevent the Plaintiff from using the escalator, failing to train employees, and permitting a defective condition to exist. No evidence as to Plexiglas panels was proffered in the case against Otis, and the Plaintiff is precluded from doing so now. Cf. Virgo v. Lyons, 209 Conn. 497, 551 A.2d 1243 (1988).
It was noted above that the issue of the allegedly defective condition of the escalator is res judicata, and may not be re-litigated here. It would be more precise to say that the Plaintiff collaterally es-topped from re-litigating that issue.
The Plaintiffs complaint against Otis alleged, inter alia, that the escalator was in a “defective condition” and that the Defendant Otis “e. permitted said condition to exist for such a period of time that Otis knew or should have known of the existence of the defective condition.” Here the allegation against the Defendant is essentially the same: “e. permitted said condition to exist for such a period of time that the Defendant knew or should have known, of the existence of the defective condition of the escalator that failed remedy (sic.) and correet the same.” As noted in the Otis decision, “the Plaintiff has not produced any evidence of any defect in the escalator.” Murphy v. MTGA, 2 G.D.R. 129, 134, 6 Am. Tribal Law 531 (2005).
The question of a defect also goes to the issue of proximate cause. In the absence of a defect in the escalator, any alleged negligence in the inspection, maintenance, or repair of the escalator could not be the proximate cause of the Plaintiffs injuries. Id. at 135, 6 Am. Tribal Law 531.
Any evidence of any defective condition of the escalator would have naturally, and should have, been introduced in the case against Otis. The suggestion that “it would have been prudent to explore the attachment of Plexiglas fall shields to the sides of the elevator (sic)” is a claim that the escalator was defective. This claim rests upon the same point or question which, in essence and substance, was litigated and determined in the prior action against Otis.
“It has been stated as a general rule that where the right to relief in the one action rests upon the same point or question which, in essence and substance, was litigated and determined in the prior action, the conclusiveness of the judgment extends not only to every matter which was offered and received to sustain or defeat the claim or demand, but to any other admissible matter which might have been offered for that purpose. Therefore, if a material fact, decisive of the case, is tendered as an issue and not withdrawn, a determination adverse to the party tendering it is conclusive against him in a subsequent action involving the same issue, whether he introduced evidence in the former action in support of such issue or not. Matters or questions within the scope of an adjudicated issue may not be raised in a subsequent action between the same parties, even though such action is upon a different cause of action; the prior determination of the litigated issue is conclusive as to every matter that might have been urged for or against that issue in its determination. In this respect, if an issue is decided in a former action, a party cannot escape the estop- *434 pels by advancing new arguments with respect to such issue. Nor is an offer of more conclusive evidence, presented at a subsequent hearing, sufficient grounds for disallowing application of collateral estoppel.” (citations omitted).
46 Am.Jur.2d Judgments § 544.
The fact that the Defendant here was not precisely a party to the Otis motion for summary judgment is immaterial. Mutuality is not a requirement of collateral estoppel. 47 Am.Jur.2d Judgments § 645, citing, e.g., Aetna Casualty & Surety Co. v. Jones, 220 Conn. 285, 596 A.2d 414 (1991). A defendant may seek “to preclude a plaintiff from re-litigating an issue which the plaintiff previously litigated and lost against a different defendant.” Id. at § 648, citing, e.g., Gionfriddo v. Gartenhaus Cafe, 15 Conn.App. 392, 546 A.2d 284 (1988) (approving the “defensive use of collateral estoppels [which] occurs when a defendant in a second action seeks to prevent a Plaintiff from re-litigating an issue that the Plaintiff had previously litigated in another action against the same defendant or a different party.” 15 Conn.App. at 404, 546 A.2d 284).
Further, a co-party should be able to invoke non-mutual collateral estoppels like any other party. 47 Am.Jur.2d Judgments § 674.
There is yet a further reason why the Plaintiff is precluded from re-litigating the claims of defect in the escalator. It appeared from the proceedings on the Motion for Summary Judgment in the Otis matter that Otis was the manufacturer, seller, and installer of the escalator. See, generally, Murphy v. MTGA, 2 G.D.R. 129, 6 Am. Tribal Law 531 (2005). Otis and the Defendant here entered into a Maintenance contract which was introduced in to the summary judgment proceedings. Id. at 132, 6 Am. Tribal Law 531. That contract requires that Otis (the “indemnitor”) indemnify the Defendant (The “indemnitee”) from loss and liability due to bodily injury claims arising out of Otis’s negligence.
“Where a judgment has been rendered in favor of an indemnitor, it may be pleaded against the adversary party in the former action by the indemnitee, even though the indemnitee was not a party to the prior action.” 47 Am.Jur.2d Judgments § 685. A fortiori, the rule will apply here, where the MTGA (the indemni-tee) was a party to the “prior action”, i.e., the proceeding against Otis.
“Moreover, a judgment entered in an action involving an indemnitor precludes a later action against an indemnitee to the same extent as it precludes a second action against the indemnitor; a Plaintiff who has litigated a prior action may not sue a new party on the same claim in a second action if the new party could seek indemnity from a litigant in the prior action.” 47 Am.Jur.2d Judgments § 685. Because any such claim against Otis is res judicata., so the Plaintiff here is collaterally: stopped from asserting the claim against the Defendant MTGA.

li. The Hiring, Training, Supervision and Proper Provision of the Defendant’s Security Staff

Paragraphs 5.f.—j. of the complaint allege negligence in failing to train and supervise; hiring unqualified security staff; failing to investigate and train security personnel; failing to provide proper security; and failing to provide sufficient security.
The Defendant’s motion asserts that the Plaintiffs injury was not foreseeable because no one had fallen off an escalator before, and that public policy does not extend so far as to impose a duty on *435 the part of the Defendant to prevent injuries such as suffered by the Plaintiff. The Defendant also contends that no act or omission of the Defendant was the proximate cause of the Plaintiffs injuries because “no reasonable trier of fact could find that reasonable training and reasonable deployment of security would have prevented the Plaintiffs fall from the escalator.” The Defendant may well prevail on either of those issues after trial; but the only question at this time is whether an issue of fact exists, not to try that issue if it does exist. While the Defendant has presented substantial documentary evidence in support of its motion, the Plaintiff has shown through evidence that a genuine issue of material fact exists. The Plaintiff has offered a report of a witness claimed to be an expert, Mr. Baxter, who has submitted a report containing his opinions that the Plaintiffs injury was foreseeable, that the Defendant breached its duty of exercising due care, and that this breach was a proximate cause of the Plaintiffs injuries. Whether this witness qualifies as an expert is a question of fact to be determined at trial. Whether his opinions have any merit also remains to be determined. The court expresses no opinion as to Mr. Baxter’s qualifications, or as to the soundness of his opinions. The “fact” of his “opinion,” however, must be taken into account.
“For the purposes of an expert’s opinion, the expert’s ‘personal knowledge’ of ‘facts’ is comprised of those materials on the basis of which he properly may render his opinions.... Furthermore, an expert’s opinion is, for purposes of § 381, a ‘fact’ that would be admissible at trial, assuming that the expert is qualified to render such an opinion.” Barrett v. Danbury Hospital, 232 Conn. 242, 251-252, 654 A.2d 748 (1995) (citations omitted.) (§ 381 of the Connecticut Rules are substantially equivalent to our Rule Sec. 49.)
The Plaintiff cites the deposition testimony of a friend of the Plaintiff, Mr. Palmer who was present with the Plaintiff during the evening, and witnessed the fall. Mr. Palmer testified that they had been drinking during the evening and that the Plaintiff was “having a good time”; “laughing, joking around, enjoying himself, but I mean he wasn’t being loud or boisterous;” “nothing out of the normal. I mean he was acting like someone who had been drinking and was intoxicated and ... he wasn’t loud and obnoxious, but he was loud and happy and having a good time;” the Plaintiff “was swaying”. He was definitely “showing signs of being drunk at that point.” He did not have any concerns for the Plaintiffs safety because he was swaying. Walking from the Ultra 88 to the escalator, Plaintiff was stumbling at that point but Mr. Palmer did not have any concerns for the Plaintiffs safety at that point because “I mean stumbling walking around didn’t seem like an issue.” Earlier, Mr. Palmer testified that “it wasn’t a concern, you know, just walking around the casino.”
The deposition evidence of Mr. Palmer, which is relied on by the Plaintiff to create a factual issue, and is cited in the Baxter Report, does not well correspond with the videotape recording. It is not clear precisely where the Plaintiff wTas when he was “swaying” or “stumbling” or to what extent he was “swaying” or “stumbling”, or how obvious that might have been to a trained security guard if he were to have observed the Plaintiff. The video shows only the Plaintiff stepping onto the top step of the escalator with no apparent “swaying” or “stumbling,” and no “definite signs of being drunk” as argued by the Plaintiff. This is an issue of fact for trial.
*436 The Defendant vigorously disputes Mr. Baxter’s report, stating: “many of the purported facts which support Mr. Baxter’s opinion are simply wrong and unfounded.... However, Mr. Baxter’s statement is blatantly incorrect.... Again, Mr. Baxter is wrong.... Again, Mr. Baxter has taken deposition testimony and incorrectly used it as support for a completely different factual proposition.... However, Mr. Baxter completely ignored the deposition of Ken Nelson given in this matter on June 7, 2007.... It is rather curious that Mr. Baxter could have overlooked this testimony .... Again, this is just another example of Mr. Baxter’s negligent or willful misrepresentation of the facts of this case.” It is not, however, permitted for the trial court in determining a motion for summary judgment, to judge the credibility of this witness. It suffices to say that the vigorous nature of the challenge to Mr. Baxter’s credibility demonstrates the genuineness of at least some issues of material fact.
The Defendant also argues that “Finally, aside from all the factual errors in Mr. Baxter’s report, his opinions go well beyond his purported expertise and into questions of law to be ultimately determined by the court. Specifically, the issue of foreseeability is a question to be determined by the court based on the facts in this case.” In this, the Defendant is correct. Mr. Baxter is unqualified to give any legal opinion. When he ventures to do so, he is wrong. For example, in his discussion of proximate cause, he relies on the discredited “but-for” theory of causation. The “but-for” theory has long been rejected in Connecticut. See, e.g., Smithwick v. Hall & Upson, Co., 59 Conn. 261, 21 A. 924 (1890). This theory is unsatisfactory as a matter of policy because it would lead to the eduction ad abmrdum that If the Defendant had not established a casino, the injury would have happened. No one could claim that this “can in any just or legal sense be deemed the cause of the injury.” 59 Conn. at 269, 21 A. 924.
Rather, Connecticut adheres to the substantial factor theory of proximate causation: “To constitute such a causal relation between Defendant’s tort and Plaintiffs damage as will suffice to maintain an action of tort, the Defendant’s tort must have been a substantial factor in producing the damage complained of.” Mahoney v. Beatman, 110 Conn. 184, 195, 147 A. 762 (1929); Kinderavich v. Palmer 127 Conn. 85, 15 A.2d 83 (1940). This is the test in this court. Paladino v. MTGA, 2 G.D.R. 34, 25, 4 Am. Tribal Law 577, 2003 WL 25795201 (2003). See. MTC § 3-245.
A substantial factor must be a real time factor that produces the result. There are issues of fact as to whether any act or omission of the Defendant was a substantial factor in producing the Plaintiffs injury. The Plaintiff will have the burden of proving this by a preponderance of the evidence. Treating the Baxter report as a fact, the Plaintiff has shown thal there are issues of material fact as to the existence and extent of the Defendant’s duty to the Plaintiff, and as to whether any breach of any such duty was a proximate cause of the Plaintiffs injury. These are mixed questions of law and fact which cannot be decided on a motion for summary judgment.
Treating the Baxter report as a “fact” for purposes of creating an issue of fact, does not assure the Plaintiff that Mr. Baxter will be qualified as an expert at trial; or, if qualified, that his opinions will be admissible or will be credited. The Plaintiff has the ultimate burden of proving by a preponderance of the evidence that the Defendant was negligent, i.e., breached a duty owed to the Plaintiff, and *437 that such negligence was a substantial factor in producing the Plaintiffs injuries.
The Defendant also raised the significant issue of the Plaintiffs comparative negligence under which “any award of damages to a claimant shall be reduced in proportion to the claimant’s contributory negligence, provided that the claimant shall recover nothing if the claimant’s contributory negligence is determined to be greater than fifty (50) percent.” MTC § 3—251(b). This too, is an issue of fact for trial.
IV

Conclusion

“Summary judgment procedure is especially ill-adapted to negligence cases, where, as hei'e, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation ... [1] [T]he conclusion of negligence is negligence is necessarily one of fact; ... Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner ... In the present case, on the pleadings and affidavits, the parties were at issue.... The plaintiff alleged the truth of these facts and the defendant denied it. In the nature of the case no independent or documentary proof was available to make quite clear what the truth was and exclude any real doubt as to the actual factual situation. The situation was peculiarly one which required an evidentiary hearing for a trial of the issues of fact in which the trier would be called on to determine the credibility of witnesses and the weight to be given to their testimony. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised.” Spencer v. Good Earth Restaurant Corporation, 164 Conn. 194, 198-199, 319 A.2d 403 (1972), (citations and internal quotation marks omitted.)
The Motion for Summary Judgment is therefore denied.

. Herein, this Defendant’s Motion differs from that in Otis. While it is the case that die issue of negligence in a mixed question of law and fact, in Otis the allegation of negligence was predicated entirely on the existence of some defect in the escalator. The defendant offered no evidence of such a defect. There was not issue of material fact as to that question. Therefore, as a matter of law, there could be no finding of negligence or proximate cause.